**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| **MELISSA JO MILLER,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 21-cv-3207** |
| | ) | |
| **KILOLO KIJAKAZI,** | ) | |
| **Commissioner of Social Security,** | ) | |
| **Defendant.** | ) | |

## OPINION

**COLLEEN R. LAWLESS, United States District Judge:**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Administrative Law Judge (ALJ)'s Decision denying Plaintiff Melissa Jo Miller's application for social security disability benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1383(c)(3). Before the Court are Plaintiff's Motion for Summary Judgment (Doc. 14) and Defendant's Motion for Summary Affirmance (Doc. 18). For the reasons that follow, the ALJ's Decision is AFFIRMED.

## I.     BACKGROUND

On January 15, 2020, Plaintiff filed her application for supplemental social security income. (R. 78). On February 6, 2020, Plaintiff filed an application for disability and disability insurance benefits. (*Id.*). Both documents alleged an onset disability date of January 11, 2019. (*Id.*). Plaintiff alleges disability due to pain, fatigue, depression, anxiety, confusion, dexterity issues, foot pain, hand issues, and balance issues. (R. 572). Plaintiff was 43 years old on her alleged onset date and has at least a high school education. (R.

88). The claims were initially denied on August 28, 2020, and upon reconsideration on October 23, 2020. (R. 78).

Plaintiff's husband, Richard Miller, filed a third-party function report. (R. 478). He wrote that Plaintiff must frequently rest, has constant pain, and gets anxious around people. (*Id.*). He noted Plaintiff uses a shower chair and a bed rail. (R. 484). He also stated Plaintiff gets along fine with authority figures and does "ok" with changes in routine, although she does become nervous. (R. 484).

On April 7, 2021, a hearing was held before the ALJ, and both Plaintiff and a vocational expert ("VE") testified. (R. 78). Plaintiff testified that she has extreme pain in her feet, ankles, and hands and uses a walker. (R. 108). She testified that her hands and legs are very weak and stiff, and she can only lift a half gallon of water. (R. 108-09, 111). She experiences back cramps and spasms and gets very dizzy when standing. (R. 108). She can only do household chores for two to three minutes before needing a break. (R. 118). Further, she is very sensitive to light and gets migraines daily for a period of up to 24 hours. (R. 109). Plaintiff experiences anxiety and has a difficult time remembering and understanding what she reads. (R. 110-11; 116-17). Her husband helps her with brushing her hair, shaving, opening containers, picking things up, helping her with balance when walking, zipping up her jacket, and cutting her food with a fork. (R. 115).

The ALJ questioned the VE about the types of jobs available to an individual who is limited by the following: (1) occasionally lifting up to ten pounds; (2) standing and walking for about two hours and sitting for up to six hours with normal breaks; (3) occasional climbing of ramps or stairs, but never ladders, ropes, or scaffolds; (4)

occasional balancing, stooping, kneeling, crouching, and crawling; (5) avoiding concentrated exposure to extreme cold, extreme heat, wetness, humidity, excessive vibration, and irritants, such as fumes, odors, dust, gases and poorly ventilated areas; (6) avoiding concentrated exposure to hazardous machinery; (7) work consisting of simple and routine tasks; and (8) no interaction with the public, but occasional interaction with coworkers and supervisors. (R. 122). The VE testified that there would be numerous jobs available, including assembler, production worker, and product inspectors. (R. 123). The VE also estimated the number of jobs available in each category, including 34,000 production workers nationwide. (*Id.*)

When asked about an individual with the same limitations, but with the added limitation of needing a rollator to walk or ambulate, the VE testified that it would "reduce, but not eliminate" the range of jobs by approximately 55 percent of the numbers provided. (*Id.*). Later, Plaintiff's attorney asked the VE: "If the hypothetical individual needs a rollator to walk, where would they be carrying the items that they need to carry up to ten pounds?" (R. 125). The VE responded that the individuals are "not so much walking to carry, but they're more like lifting that ten pounds or so at a very confined work station," and "that's why there is a 65 percent reduction." (*Id.*) The VE further elaborated on the reasons why the numbers are not entirely precluded, just "considerably reduced." (*Id.*). When hypothetically asked about a person who did not just use the rollator for walking, but also balancing, the VE testified that there would be no competitive employment because that would mean the person does not have mobility of their hands while using the rollator. (R. 126-27).

The ALJ found Plaintiff did not have substantial gainful activity since January 11, 2019. (R. 80). The ALJ determined Plaintiff has the following severe impairments: fibromyalgia, degenerative disc of thoracic and lumbar spine, chronic pain syndrome, asthma, peripheral neuropathy, obesity, and mood disorder. (R. 81). The ALJ also noted non-severe impairments, including migraines, essential hypertension, and benign paroxysmal position right ear vertigo. (R. 81).

The ALJ concluded Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (*Id.*) Regarding fibromyalgia, the ALJ found that there was no evidence that it: (1) increases the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing or (2) is medically equivalent to a listed impairment. (*Id.*). The ALJ determined that Plaintiff's degenerative disc of thoracic and lumbar spine does not meet the criteria of Listings 1.15 or 1.16. (*Id.*). The ALJ concluded that Plaintiff's asthma does not meet the criteria in Listing 3.02 because the record does not contain qualifying test scores. (*Id.*). The ALJ also concluded that Plaintiff's chronic pain syndrome and peripheral neuropathy did not meet the criteria in Listing 11.14, because Plaintiff does not have disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station. The ALJ considered Plaintiff's obesity, but it did not meet any listings when considered along with Plaintiff's other impairments. (R. 82). Based on the evidence in the record, the ALJ found Plaintiff has moderate limitations in understanding, remembering, or applying information and interacting with others. (R.

82). The ALJ also found Plaintiff had mild limitations in concentrating and adapting and managing oneself but concluded her mental impairments do not meet the paragraph B or C requirements. (R. 82-83).

Before step four, the ALJ determined Plaintiff met the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except this individual is able to lift up to 10 pounds occasionally. She can stand/walk for about two hours and sit for up to six hours in an eight-hour workday, with normal breaks. She is able to occasionally climb ramps or stairs, but never climb ladders, ropes or scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. She should avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, excessive vibration, and irritants, such as fumes, odors, dust, gases and poorly ventilated areas. She should avoid concentrated exposure to operational control of moving machinery. She should avoid unprotected heights and exposure to hazardous machinery. Her work is limited to simple and routine tasks. She should have no interaction with the public. She should have only occasional interaction with co-workers and supervisors.

(R. 83). The ALJ came to this conclusion after going through a detailed analysis of Plaintiff's subjective statements and the medical evidence. (R. 83-87). The ALJ noted that the "[t]reatment notes in the record generally do not support the claimant's allegations of chronic pain, as they indicated degenerative minor changes in the claimant's spine." (R. 87). At step four, the ALJ concluded Plaintiff would be unable to perform her past relevant work as a data entry clerk. (R. 87). At step five, based on the VE's testimony and Plaintiff's age, education, work experience, and residual functional capacity, the ALJ determined Plaintiff could perform jobs existing in significant numbers in the national economy. (R. 88–89). Thus, the ALJ concluded that Plaintiff was not disabled. (R. 89).

II.     DISCUSSION

A. Legal Standard

To determine whether a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the claimant's impairment meets or equals any listed impairment; (4) whether the claimant is unable to perform his past relevant work; and (5) whether the claimant is unable to perform any other available work in light of his age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a). "An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops inquiry and leads to a determination that the claimant is not disabled." *King v. Barnhart*, 66 F. App'x 65, 68-69 (7th Cir. 2003), *quoting Stein v. Sullivan*, 892 F.2d 43, 44 n.1 (7th Cir. 1989).

The court reviews the ALJ's decision deferentially to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Where substantial evidence supports the ALJ's disability determination, the court must affirm the decision even if "reasonable minds could differ concerning whether [the claimant] is disabled." *L.D.R. v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019), *quoting Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The Court considers the ALJ's opinion as a whole and the Seventh Circuit has said it is a "needless formality

to have the ALJ repeat substantially similar factual analyses" at different sequential steps. *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004). The task of a court is not to reweigh evidence or substitute its judgment for that of the ALJ. *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017). A reviewing court does not "resolve conflicts or decide questions of credibility." *L.D.R.*, 920 F.3d at 1152. The Court does not "nitpick" the ALJ's decision, but rather "focus[es] on whether the ALJ built a 'logical bridge from the evidence to his conclusion.'" *Wright v. Kijakazi*, 2021 WL 3832347, at *5 (7th Cir. 2021) (internal alterations omitted), *quoting Rice*, 384 F.3d at 369.

### B. Analysis

Plaintiff argues the ALJ committed the following errors: (1) misstated the testimony of the VE; (2) cherry-picked and mischaracterized the medical exhibits in the record and failed to draw an accurate bridge between the exhibits and the ultimate conclusions in the claim; and (3) violated SSR 16-3P by citing to records that pre-dated Plaintiff's alleged onset date. (*Id.*).

#### 1. Vocational Expert

Plaintiff argues the ALJ erred by failing to discuss Plaintiff's alleged need for a walker and the VE's testimony regarding the walker. (Doc. 15 at 34). Plaintiff claims the VE's testimony was confusing because he offered "three mutually contradictory opinions." (Doc. 15 at 35). Defendant argues the VE's testimony did not affect the case since the ALJ did not include a provision for using a walker either to walk or balance in the ultimate RFC. (Doc. 18 at 10).

The Seventh Circuit has held that while an ALJ does not have to evaluate each and every piece of evidence, they are required to build an "accurate and logical bridge" from the evidence presented to the ultimate conclusion. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2011). The RFC is "an assessment of an individual's ability to do sustained work. It is the most an individual can work despite his or her limitations or restrictions." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022), *citing* SSR 96-8p. All limitations that an ALJ finds for a claimant must be included in the RFC and the hypothetical questions, even those that are not severe. *Ray v. Berryhill*, 915 F.3d 486, 492 (7th Cir. 2019); 20 C.F.R. §§ 404.1545(a)(2), 404.1545(e); *see also* Social Security Ruling 96-8p ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"). The duty to analyze non-severe impairments in formulating a plaintiff's RFC is fundamental to the disability programs under the Social Security Act. *See Bowen v. Yuckert*, 482 U.S. 137, 150-51 (1987).

SSR 96-9p explains that an "adjudicator must always consider the particular facts of a case" concerning the use of hand-held assistive devices. The ruling explains:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).

*Id.* Depending on the circumstances, the SSA's guidance suggests that consultation with a vocational resource "may be especially useful" to consider the effect of the use of an assistive device on the occupational base. *Id.*

In *Tripp v. Astrue*, 489 F. App'x 951, 955 (7th Cir. 2012)[1], the Seventh Circuit explained that even abundant evidence of the plaintiff's use of an assistive device— including his presentation with one during treatment visits—did not necessarily establish that an assistive device was medically required according to SSR 96-9p. In that case, one doctor stated that "Tripp's abilities to stand and walk were more than 50% reduced." *Tripp*, 489 F. App'x at 955. However, the Seventh Circuit found that those deficits were "not inconsistent with a finding that he was capable of sedentary work, which is limited to jobs requiring no more than two hours of standing and walking per day." *Id.* at 955-56.

In this case, there is some evidence in the record regarding Plaintiff's balance issues. On November 19, 2019, a doctor noted that the "Tinetti Balance assessment is 19/28 suggesting moderate risk for falls (patient declines assistive device)." (R. 991). An assessment from Carlinville Area Hospital on September 2, 2020, indicated that Plaintiff "[r]equires BUE for support during most of the balance challenges." (R. 1065). On January 20, 2021, a doctor's note stated that Plaintiff "denie[d] any imbalance with ambulation." (R. 1450). Days later, on January 26, 2021, Plaintiff was prescribed a rollator for "chronic pain syndrome." (R. 556). On February 3, 2021, Plaintiff was "unable to heel to toe walk secondary to difficulties with balance." (R. 1477-78).

When discussing an individual with the limitation of needing a rollator to walk or ambulate, the VE testified that it would "reduce, but not eliminate" the range of jobs by approximately 55% of the numbers provided. (R. 123). When hypothetically asked about

---

[1] Although the Seventh Circuit's Order in *Tripp* has no precedential effect, the Court finds the close factual fit and the Seventh Circuit's reasoning to be highly persuasive. *United States v. Ramirez*, 675 F.3d 634, 636 (7th Cir.2011) (noting unpublished decisions can "offer helpful guidance.").

a person who did not just use the rollator for walking, but also balancing, the VE testified that there would be no competitive employment because that would mean the person does not have motility of their hands while using the rollator. (R. 126-27).

In his evaluation, the ALJ noted that there is "no indication that the claimant requires... specialized care for her paroxysmal positional vertigo." (R. 81). Further, the ALJ recognized that Plaintiff required the use of a walker or rollator. (R. 85). He began by noting Plaintiff's allegation that she requires a walker, wheelchair, bedrails, shower chair, and handrails in her home. (*Id.*). He also recognized that Plaintiff's allegations were supported by the record when he wrote: "The claimant was prescribed a wheeled assistive device. On exam, she was observed to have a waddling/limping gait. She was unable to heel to toe walk secondary to difficulties with balance. In addition to an assistive device, the claimant was prescribed shower rails." (*Id.*) (internal citations omitted).

After that discussion, the ALJ wrote: "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. 85). Specifically, the ALJ pointed to the following evidence in the record: (1) Plaintiff's complaints of reduced sensation and pain in her extremities, but her denial of this to her providers; (2) Plaintiff's prescription for an assistive device, and her failure to bring it to appointments; (3) Plaintiff's generally

normal gait, though that was not consistent throughout the record; (4) Plaintiff's muscle strength improvements and normal examinations of her lower extremities; and (5) the lack of signs that are often present in individuals who suffer from severe and disabling pain. (R. 85-86).

The ALJ's discussion built a logical bridge between the evidence and the VE testimony and the RFC. *Dixon*, 270 F.3d at 1176. Plaintiff's walker was prescribed for her chronic pain syndrome, not her trouble balancing. (R. 556). There is no medical documentation indicating that Plaintiff requires a walker for balancing, in accordance with SSR 96-9p. Although there is some evidence in the record that Plaintiff had balancing issues, the ALJ addressed and considered that evidence and rejected it based on the totality of the evidence in the record. (R. 81).

Additionally, because the ALJ found "no indication that the claimant requires [ ] specialized care for her paroxysmal positional vertigo," the ALJ did not need to impose the most restrictive hypothetical posed to the VE. (R. 81). Instead, the ALJ's conclusion properly applied the VE's opinion for an individual with the limitations listed in the RFC. (R. 88; 123).

### 2. Medical Exhibits

Next, Plaintiff argues that the ALJ "cherry-picked through the evidence," and mischaracterized portions of it (Doc. 15 at 38-46). Specifically, there are several findings made by the ALJ in determining the RFC that Plaintiff argues mischaracterized the evidence: (1) the ALJ's discussion that Plaintiff did not exhibit the signs of an individual who suffers from severe and disabling pain; (2) the ALJ's discussion of Plaintiff's physical

therapy; (3) the ALJ's finding that Plaintiff's reports of fatigue are not consistent throughout the record; and (4) the ALJ's discussion of Plaintiff's shopping habits. (*Id.*). Further, Plaintiff argues that the ALJ erred because he used a boilerplate statement at the conclusion of his analysis. (*Id.* at 47-48). Defendant argues that there is no indication that the ALJ's discussion was improper, and, even if it was, any error was harmless. (Doc. 18 at 6).

If the medical evidence shows the existence of an underlying impairment that could be reasonably expected to produce the claimant's symptoms, the ALJ must evaluate "the intensity, persistence, and functionally limiting effects of the symptoms... to determine the extent to which the symptoms affect the individual's ability to do basic work activities." SSR 96-7p; *see* 20 C.F.R. § 416.929(c); *Herron v. Shalala*, 19 F.3d 329, 334 (7th Cir. 1994). "This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects." SSR 96-7p. This Court does not decide questions of credibility, deferring instead to the ALJ's conclusions unless "patently wrong." *See Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017). The determination of credibility is given special deference as he is in the best position to evaluate the credibility of the witness. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000).

To determine the credibility of allegations of disabling pain, an ALJ may consider several factors, including objective medical evidence and any inconsistencies between the allegations and the record. 20 C.F.R. § 404.1529(c). While "an individual's statements about the intensity and persistence of pain or other symptoms or about the effect the

symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence," *Cole v. Colvin*, 831 F.3d 411, 416 (7th Cir. 2016), it is also the case that subjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence. 42 U.S.C. § 423(d)(5)(A); *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022); *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020). "[D]iscrepancies between the objective evidence and self-reports may suggest symptom exaggeration." *Jones v. Astrue*, 623 F.3d 1155, 1161 (7th Cir. 2010); *Schmidt v. Barnhart*, 395 F.3d 737, 746-47 (7th Cir. 2005).

### a. Lack of Symptoms Associated with Pain

Here, the ALJ determined the intensity, persistence, and limiting effects of Plaintiff's impairments. (R. 84). He began by noting Plaintiff's assertions about her subjective symptoms and then reviewed whether the allegations had some objective support throughout the record. The ALJ went through a detailed report of Plaintiff's medical evidence and noted several discrepancies throughout the medical record. (R. 84-86). It was only after going through that detailed history that the ALJ noted the lack of common symptoms associated with chronic pain. (Doc. 15 at 38). Specifically, the ALJ wrote:

> Despite the claimant's complaints of chronic back pain, chronic pain syndrome, neuropathy, and fibromyalgia, none of her treating sources have reported observing any of the signs frequently present in the individual who suffers from severe and disabling pain. These include weight loss, premature aging, muscle atrophy from non-use or facial expressions such as grimacing. The claimant is described as well nourished and in no acute distress (Exhibits C1F/8; C2F/16, 68, 72). Again, this is not to say the claimant is symptom free, but the evidence does not support a conclusion

that her pain is so severe that it precludes all work. The record does not support further accommodations for these impairments.

(R. 86). Plaintiff argues the ALJ "discounted all her complaints of pain and other physical difficulties" because she did not display the listed symptoms. (Doc. 15 at 38). However, the ALJ was clear that "this is not to say the claimant is symptom free," but instead, he was explaining why further limitations were not imposed in Plaintiff's RFC. (R. 86).

The ALJ is permitted to consider the objective medical evidence, or lack thereof, as a factor in assessing credibility. *See* 20 C.F.R. § 416.929(c)(2); *Smith v. Apfel*, 231 F.3d 433, 439 (7th Cir. 2000) ("[A]n ALJ may consider the lack of medical evidence as probative of the claimant's credibility."). Other courts have concluded that signs of muscle atrophy or loss of muscle tone may be expected if a person has been standing for no more than a few minutes at a time and spends much of the day lying down. *See Elaina M. v. Kajakazi*, 2023 U.S. Dist. LEXIS 126782, at *19 (N.D. Ill. July 24, 2023); *Diane E. v. Kijakazi*, 2023 U.S. Dist. LEXIS 49040, 2023 WL 2612722, at *7 (N.D. Ill. Mar. 23, 2023) ("Given Plaintiff's testimony that she mostly lays in bed and rests all day, however, the ALJ did not commit reversible error in mentioning that Plaintiff routinely presented with full muscle strength and full range of motion."). Plaintiff testified that she cannot stand for longer than three to five minutes, and, excluding eight nighttime hours, she is in bed for "nine out of 16 hour or maybe ten." (R. 108, 119). Plaintiff's affect during her medical visits was also relevant, as it was used to demonstrate that her subjective reports of pain contrasted with the objective medical evidence. Thus, the ALJ did not err in noting the lack of common symptoms, in addition to his recitation of the other evidence when determining the RFC.

The Court finds the RFC is substantially supported by the evidence, and there is a logical bridge between the evidence and the RFC.

### b. Plaintiff's Physical Therapy

The ALJ "must evaluate the record fairly." *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003). The ALJ is required to predicate her decision on all pertinent evidence and cannot ignore contrary evidence. *Golembiewski*, 322 F.3d at 917; *Plessinger v. Berryhill*, 900 F.3d 909, 915 (7th Cir. 2018). However, the ALJ need not recite every single piece of evidence. *See Wilder v. Kijakazi*, 22 F.4th 644, 651 (7th Cir. 2022) ("An ALJ need not specifically address every piece of evidence but must provide a logical bridge between the evidence and his conclusions. The Court will not reweigh the evidence or substitute its judgment for that of the ALJ." (Internal citations, quotation marks, and brackets omitted)).

When the ALJ mischaracterizes material medical evidence, the underlying decision may be compromised. *Golembiewski*, 322 F.3d at 917. For example, the Seventh Circuit reversed an ALJ's decision based on the ALJ's statement that the plaintiff's MRI showed no herniations, even though a physician diagnosed the plaintiff with probable herniation. *Id.*

In this case, the ALJ discussed Plaintiff's physical therapy and noted she:

> attended physical therapy, and she made minimal progress. Her treatment record shows that she had seven cancellations of visits throughout a two-month period. She was discharged due to lack of progress and attendance in physical therapy. Despite very limited treatment, the claimant showed evidence of improvement in muscle strength. On exam, she presented 5/5 bilaterally upper and lower extremity motor strength. Furthermore, her sensation was intact. An examination of her lower extremities showed that

her feet and toes were normal bilaterally. While her right foot had diffuse
tenderness, her sensation appeared to be intact.

(R. 85-86) (internal citations omitted). Plaintiff argues that the ALJ's statement that
claimant missed physical therapy and she was discharged due to a lack of progress in
physical therapy was contradicted by Plaintiff's testimony that she missed these visits
due to having increased pain that prevented her from leaving the house and participating
in therapy. (Doc. 15 at 44).

Plaintiff is correct that the ALJ did not include that information, but that does not
rise to the level of mischaracterizing evidence. Unlike the material facts that warranted
remand in *Golembiewski*, the additional explanation as to the absences did not ignore
relevant pieces of information. Plaintiff does not dispute that she was in fact discharged
due to a lack of progress and attendance—Plaintiff only argues that the ALJ should have
included Plaintiff's explanation regarding Plaintiff's pain in her explanation, too. It is
apparent from the ALJ's analysis that the significance of that paragraph was to
demonstrate that the RFC imposed appropriate limitations based on Plaintiff's progress
despite the absences. While Plaintiff's pain is relevant elsewhere in the RFC, the
additional explanation for the absences is not materially significant when discussing the
positive improvements demonstrated during physical therapy. Moreover, the ALJ did
not make a credibility determination regarding the reasons for the absences. Instead, the
ALJ noted the absences to accurately reflect why Plaintiff was discharged from the
physical therapy.

c. **Reports of Fatigue**

The ALJ also noted that Plaintiff's "complaints of fatigue are not consistent throughout the record. The claimant was prescribed conservative medications to treat these symptoms." (R. 85) (internal citations omitted). Plaintiff asserts that "Out of the 6 dates of treatment, 5 of those cites indicated the claimant reported some level of fatigue" and only one of those dates indicates that Plaintiff did not report fatigue. (Doc. 15 at 44-45). Plaintiff is correct that one of the dates reflects that Plaintiff denied fatigue. (R. 605). On the other dates, she attributed her fatigue to a variety of causes: insomnia, infections, allergies, and iron deficiency. (R. 703, 822, 830 841, 1375). The ALJ did not err in considering the discrepancies between Plaintiff's own statements regarding the cause of her fatigue and the medical record. As noted, "discrepancies between the objective evidence and self-reports may suggest symptom exaggeration." *Jones v. Astrue*, 623 F.3d 1155, 1161 (7th Cir. 2010); *Schmidt v. Barnhart*, 395 F.3d 737, 746-47 (7th Cir. 2005).

### d. Daily Activities

Plaintiff also disputes the ALJ's description of Plaintiff's activities of daily living. Specifically, the ALJ wrote:

> Finally, in evaluating this claim under SSR 16-3p, the undersigned finds the severity of the claimant's allegations to be generally inconsistent with the record as a whole. Regarding her activities of daily living, the claimant admitted to shopping in stores for personal items, walking her dog, reading, and crocheting. These reported activities of daily living are generally inconsistent with the degree of functional limitation alleged.

(R. 87).

The ALJ is permitted to discuss Plaintiff's daily activities when evaluating her subjective reports of pain. *See Deborah M. v. Saul*, 994 F.3d 785, 791 (7th Cir. 2021) ("[T]he

ALJ correctly looked at Plaintiff's daily activities to see if they corroborated her pain claims, and she found that they did not. She did not equate Plaintiff's activities to full-time work."). Although an ALJ should consider a plaintiff's daily activities in assessing the severity of a plaintiff's symptoms, an ALJ must be careful not to equate a plaintiff's ability to perform activities of daily living with an ability to work full time. *Jeske v. Saul*, 955 F.3d 583, 592 (7th Cir. 2020); *see Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013) (ALJ must consider plaintiff's daily activities "with care"). Here, the ALJ evaluated Plaintiff's daily activities with the requisite care.

First, the ALJ did not mischaracterize these activities. Plaintiff reported she was able to shop in stores, even though she requires assistive devices while doing so. (R. 521). In fact, she reported to her physical therapist that her walker has allowed her to go shopping again. (R. 1076). She also told her physical therapist that she enjoyed sewing and reading and did not report any difficulties with these activities (R. 1076).

The ALJ's discussion of Plaintiff's daily activities aided his assessment of Plaintiff's credibility. *See Pepper v. Colvin*, 712 F.3d 351, 368 (7th Cir. 2013), *citing Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). For instance, even though Plaintiff's statements in her function report indicated that she could not walk the dog, her statements were contradicted by her own reports to medical providers (R. 519). In September 2020, she told her physical therapist that she was walking her dog when it pulled on the leash (R. 1072). She also noted in counseling sessions in late 2020 that walking her dog was a coping technique for her (R. 1189, 1201). Therefore, her function report statements were

undermined by the other medical evidence in the record, and the ALJ properly considered it.

Plaintiff has not demonstrated that the ALJ's consideration of her daily activities was unreasonable, nor has she shown how it harmed her. *See Palmer v. Saul*, 779 F. App'x 394, 400 (7th Cir. 2019) (there was no error where the ALJ noted many of the limitations to the claimant's activities of daily living, and to the extent the ALJ provided an incomplete picture, the claimant did not explain how any omission prejudiced him). Therefore, the ALJ's consideration of this factor was not an error.

### e. Boilerplate Statement

Plaintiff argues that the ALJ's boilerplate statement at the conclusion of the RFC determination was an error. (Doc. 15 at 47-48). The ALJ wrote:

> Finally, in evaluating this claim under SSR 16-3p, the undersigned finds the severity of the claimant's allegations to be generally inconsistent with the record as a whole. Regarding her activities of daily living, the claimant admitted to shopping in stores for personal items, walking her dog, reading, and crocheting. These reported activities of daily living are generally inconsistent with the degree of functional limitation alleged.

(R. 87). Plaintiff asserts that the ALJ's boilerplate statement does not sufficiently discuss how the ALJ came to his determination that Plaintiff's subjective statements are generally inconsistent with the record. (Doc. 15 at 47).

The Seventh Circuit has discouraged the use of boilerplate statements that "yield no clue to what weight the trier of fact gave the testimony." *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010). Instead, the ALJ is required to give "specific reasons" for his credibility findings. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009); *See also, Terry v. Astrue*, 580

F.3d 471, 478 (7th Cir. 2009) (The ALJ "must justify the credibility finding with specific reasons supported by the record."). If the adverse credibility finding is premised on inconsistencies between plaintiff's statements and other evidence in the record, the ALJ must identify and explain those inconsistencies. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).

Here, the ALJ went through a detailed analysis of the inconsistencies in the record, which he determined undermined Plaintiff's subjective recitation of her symptoms. (R. 83-87). The ALJ did not provide a selective reading of the evidence—he explicitly considered evidence both consistent with and inconsistent with Plaintiff's allegations of disability, and he reasonably relied on the reviewing physicians who had considered the same evidence. (*Id.*). Further, Plaintiff's assertion that the ALJ did not address any of her testimony is simply incorrect—as the Plaintiff herself notes, that is where the ALJ began his evaluation of the evidence. (Doc. 15 at 47-48; R. 84-85). The ALJ's analysis provides a logical bridge between the evidence and the RFC—even with the use of boilerplate language at the conclusion of the evaluation. This is not the type of boilerplate language which "yield[s] no clue to what weight the trier of fact gave the testimony." *Parker*, 580 F.3d at 478.

Additionally, Plaintiff has not shown that the ALJ applied the incorrect standard when determining the RFC, therefore the ALJ's use of boilerplate language was harmless. *See Jarnutowski v. Kijakazi*, 48 F.4th 769, 775 (7th Cir. 2022) ("The use of boilerplate language is not necessarily grounds to vacate the ALJ's decision if the ALJ otherwise justifies her decision to discredit [the claimant's] testimony.").

### f.  Harmless Error

Even if the ALJ's discussion surrounding the RFC was an error, it would be harmless. Plaintiff does not cite to any supporting evidence to demonstrate that the ALJ should have further limited her RFC. *See Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016) (noting that plaintiff's argument for further restrictions failed due to plaintiff's failure to identify medical evidence justifying further restrictions). Instead, Plaintiff's request is akin to asking this Court to reweigh the evidence and substitute our judgment for that of the ALJ, which this Court cannot do. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021) ("Even if reasonable minds could differ on the weight the ALJ gave to the medical evidence, we will not substitute our judgment for that of the ALJ's by reweighing the evidence."). The decision of the ALJ with regard to Plaintiff's RFC is affirmed.

### 3.  Records Predating Plaintiff's Alleged Onset Date

Finally, Plaintiff argues that the ALJ violated SSR 16-3p by citing to records that predate Plaintiff's alleged onset date. (Doc. 15 at 40-46). Notably, Plaintiff does not cite to any authority to indicate that an ALJ's consideration of evidence which predates the alleged onset date is impermissible. (*Id.*).

Indeed, medical evidence predating a claimant's onset date is not categorically irrelevant to a finding of disability. *Groves v. Apfel*, 148 F.3d 809, 811 (7th Cir. 1998) (finding evidence which predated claimant's onset was still relevant in that it might "reinforce or illuminate or fill gaps in the evidence"). The ALJ must consider *all* of the medical evidence, along with all the other evidence in the record. *See Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) ("An ALJ must consider all medical opinions in the record.").

Thus, although an ALJ should not rely exclusively on evidence predating the alleged onset of the disability as a basis from which to deny benefits, he may consider it along with the other evidence in the record. *See Groves*, 148 F.3d at 811.

Plaintiff highlights three instances where the ALJ cited to evidence which pre-dated her alleged onset date, which concerned her use of an assistive device, her complaints of fatigue, and the lack of pain or distress. (Doc. 15 at 44). In evaluating the entirety of the ALJ's decision, it is apparent that the ALJ considered evidence from the entire record, not just evidence that predated the alleged onset date. (R. 83-87). The ALJ's use of medical records from before the onset date is, therefore, entirely proper, as it aided the ALJ in his credibility determination. *See supra* II.B.2.

## III.  CONCLUSION

In summary, the Court has reviewed all of Plaintiff's arguments and concludes that the ALJ properly applied the law and supported his decision with substantial evidence. For these reasons, Plaintiff's Motion for Summary Judgment (Doc. 14) is DENIED, and Defendant's Motion for Summary Affirmance is GRANTED. The decision denying benefits to Plaintiff Melissa Jo Miller is AFFIRMED. The Clerk of the Court is directed to enter judgment in favor of the Defendant Commissioner and against Plaintiff Miller. This case is terminated.

ENTER: September 20, 2023

COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE